| | |
|---|---|
| DOUGLAS MOCK,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>THOMAS DART, Cook County Sheriff; JOHN RABA, Director of Cermak Health and Hospital Services; and COUNTY OF COOK,<br><br>　　　　Defendants. | No. 14 CV 3273<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

Douglas Mock was involved in a fight on May 28, 2012, and broke a bone in his right hand. Chicago police officers arrested Mock and took him into custody, but before transporting him to the Cook County Jail on May 31, they took him to South Shore Hospital. A physician at the hospital gave Mock a temporary bandage and told him to follow up with a doctor in a few days. Mock saw an intake physician at the jail (also on May 31), but did not see another doctor until July 25, 2012. By that time, Mock claims that his hand had healed improperly. He contends that the three nurses he saw in the interim gave him inadequate medical care and did not follow the instructions from the doctor at South Shore. In May 2014, Mock filed a *pro se* complaint against the Cook County Department of Corrections, Cook County, unknown doctors, and unknown medical staff at Cermak Health Services (which

provides medical services to detainees at the jail) for money damages and injunctive relief. The claims were dismissed without prejudice, and Mock amended his pleadings, ultimately filing (now with the assistance of counsel) a second amended complaint against Cook County, the Sheriff of Cook County, and the current director of Cermak for violations of his constitutional and state-law rights.

Defendants moved to dismiss the current complaint on the ground that Mock's claims are barred by the statute of limitations or fail to state a proper claim for relief under Rule 8 of the Federal Rules of Civil Procedure. For the reasons discussed below, the motions to dismiss are granted.

## I.    Legal Standard

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not include specific facts, but it must provide the defendant with fair notice of what the claim is, and the grounds upon which it rests. *Olson v. Champaign Cnty., Ill.*, 784 F.3d 1093, 1098–99 (7th Cir. 2015) (citing *Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The complaint must present enough factual matter, accepted as true, that the claim to relief "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In considering a motion to dismiss under Rule 12(b)(6), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Cincinnati*

*Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)).

## II.    Facts

On May 28, 2012, Douglas Mock was involved in a fight, and as a result fractured a finger on his right hand. [29] ¶ 17.[1] Chicago police officers arrested Mock and took him into custody later that day. *Id.* ¶ 18. On May 31, officers took Mock to South Shore Hospital, where a temporary bandage or cast (it is unclear which) was placed on his arm. *Id.* ¶ 19. He was told to follow up with a physician in two days, as the treatment received at South Shore was only temporary. *Id.* Mock was then transferred to the Cook County Department of Corrections (also known as the Cook County Jail). *Id.*

After he arrived at the jail, Mock was seen by an intake physician from Cermak Health and Hospital Services, a division of Cook County that provides medical services to pre-trial detainees. *Id.* ¶¶ 15, 20. Mock gave to the intake physician the order from the doctor at South Shore, which explained about the needed follow-up and also that x-rays should be performed. *Id.* ¶ 20. The intake physician told Mock that he would see a doctor in a few days. *Id.*

Five days passed, and still Mock had not seen another physician, so he began to submit medical requests for a doctor's visit. *See id.* ¶ 22. Mock was taken to see a nurse on June 12, 2012, but the nurse refused to change his bandages, instead

---

[1] Citations to the record are designated by the document number as reflected on the district court's docket, enclosed in brackets; referenced page numbers are from the CM/ECF header placed at the top of filings. The facts related in this opinion are taken largely from Mock's second amended complaint.

giving him only ibuprofen. *See id.* ¶¶ 22–23. The same happened during two subsequent appointments with nurses, the latter of which took place on July 12, 2012. *See id.* ¶ 23. By that time, his bandages had begun to emit a foul odor. *Id.* The nurse who saw Mock on July 12 scheduled him for a doctor's appointment two weeks later, and on July 25, 2012, Mock was taken for x-rays and to have his bandages replaced. *See id.* ¶¶ 23, 25. At that time, Mock's fingers and hand were still swollen from his initial injury, and he was still feeling pain in his arm. *See id.* ¶¶ 25–26. The doctor explained that the natural healing process had begun. *Id.* ¶ 25. According to Mock, his finger had healed improperly. *See id.* ¶ 6.

Mock claims that between June 1 and July 25, 2012, he made multiple requests for immediate medical attention—some written, some verbal—but no one "charged with [his] custody" at the jail ever responded. *See id.* ¶ 24. He filed at least one grievance, on June 19, but did not receive a response until August 20, 2012. *Id.* ¶ 22.

By September 2012, the swelling in Mock's hand had decreased, but the pain from his arm had spread to his shoulder, neck, and head. *Id.* ¶ 26. A physical therapist whom Mock saw in November explained that Mock had "locked" or "frozen" shoulders, and decreased mobility as a result. *See id.* ¶ 27. The therapist said that the shoulder problems stemmed from the arm injuries that Mock suffered in May 2012. *See id.* To correct the shoulder problem, and thus avoid chronic pain in the future, Mock would have to undergo a procedure to reset his muscles and ligaments. *See id.* (Mock does not state in his second amended complaint whether

he ever received such a procedure, but presumably he did not, since he claims that he is still unable to perform his physical-therapy exercises, and he seeks as relief "appropriate medical treatment to properly remedy [the] injuries to his shoulder, neck, and head." *Id.* ¶ 27; *id.* at 15.)

On May 1, 2014, Mock filed a *pro se* complaint under 42 U.S.C. § 1983 against the Cook County Department of Corrections, unknown doctors, unknown Cermak Hospital staff, and Cook County, alleging inadequate medical care while in custody at the jail. [1]. As neither the Department of Corrections nor Cermak is a suable entity, those defendants were dismissed pursuant to 28 U.S.C. § 1915A. *See* [5] at 2. Mock's remaining claims were also dismissed, because a complaint cannot proceed against unknown persons, and because Mock had not alleged a policy or custom of inadequate care by which the County could be held liable. *See id.* Mock was permitted to file an amended complaint, which he did on July 14, 2014. [8]. Named as defendants to the amended complaint, also filed *pro se*, were the "head of Cermak" and several John Does (all doctors and nurses at Cermak). *Id.* at 1, 3–4, 10, 12–13.

After counsel was recruited for Mock, he filed a second amended complaint on January 9, 2015. [29]. The second amended complaint includes nine counts—four against Thomas Dart in his official capacity as Sheriff of Cook County, *see id.* ¶ 13; four against the director of Cermak (currently Dr. John Raba[2]), also in his official

---

[2] The complaint names David Fagus as the Cermak defendant. *See* [29] ¶ 15 (describing Fagus as Cermak's Chief Operating Officer). Fagus was terminated as a defendant on March 24, 2015, and replaced with the current director of Cermak Health and Hospital Services. *See* [36].

capacity, *see id.* ¶ 15; and one against Cook County for indemnification under Illinois statute, *see id.* ¶¶ 77–80 (Count IX). The claims against Sheriff Dart are: (1) deliberate indifference to Mock's medical needs, in violation of Mock's due-process rights under the Fourteenth Amendment of the United States Constitution, *see id.* ¶¶ 28–35 (Count I); (2) deliberate indifference to Mock's medical needs, in violation of Mock's Eighth Amendment rights, *see id.* ¶¶ 60–62 (Count V); violation of Mock's right to equal protection under the Fourteenth Amendment, *see id.* ¶¶ 44–51 (Count III); and (4) violation of Section 5/103-2 of the Illinois Code of Criminal Procedure (725 ILCS 5/103-2), *see id.* ¶¶ 67–71 (Count VII). Mock brings the same claims against the director of Cermak (Counts II, VI, IV, and VIII, respectively). *See id.* ¶¶ 36–43, 52–59, 63–66, 72–76. Defendants move to dismiss Mock's claims because the statute of limitations has run or because Mock has failed to state a proper claim to relief. [38]; [47].

## III. Analysis

### A. The Deliberate Indifference Claims (Counts I, II, V, and VI)

#### 1. *The Statute of Limitations*

Mock's deliberate-indifference claims against Sheriff Dart and Director Raba are brought under Section 1983, and a two-year limitations period applies to those claims. *See O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) (citations omitted); *Campbell v. Forest Preserve Dist. of Cook Cnty., Ill.*, 752 F.3d 665, 667 (7th Cir. 2014) (citations omitted). In general, a Section 1983 claim arising from deliberate indifference to a prisoner's medical needs accrues, and thus the

limitations period on that claim starts to run, when the plaintiff discovers his injury and its cause—"even if the full extent or severity of the injury is not yet known." *Devbrow v. Kalu*, 705 F.3d 765, 768 (7th Cir. 2013) (citing *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994)).

Defendants here argue that the Mock's deliberate-indifference claims accrued no later than May 31, 2012, when Mock first saw the intake physician at the jail—that is, when Mock first began to receive what he perceived as inadequate medical care from Cermak staff. So, according to defendants, the statute of limitations expired on May 31, 2014, well before Mock filed his second amended complaint in January 2015. *See* [38] at 6; [47] at 6. Mock argues that the violation of his constitutional rights is ongoing, such that, under the continuing-violation doctrine, his deliberate-indifference claims never accrued at all. *See* [45] at 7–9; [51] at 7–9. (In the alternative, Mock argues that his second amended complaint relates back to his original complaint, which was filed on May 1, 2014—thirty days before defendants say the limitations period had run. *See* [45] at 4–7; [51] at 4–7.)

The continuing-violation doctrine holds that where an injury is the consequence of a continuous series of numerous events, the limitations period begins to run not from the first incidence of violation, but the last. *See Turley v. Rednour*, 729 F.3d 645, 651 (7th Cir. 2013) (citing *Heard v. Sheahan*, 253 F.3d 316, 318 (7th Cir. 2001)); *Heard*, 253 F.3d at 319 (citations omitted). In *Heard*, the Seventh Circuit concluded that the doctrine applied to an inmate's claim of deliberate indifference to his medical needs by prison staff. The defendants' refusal

to treat the prisoner's condition "continued for as long as the defendants had the power to do something about [that] condition . . . . Every day that they prolonged his agony by not treating his painful condition marked a fresh infliction of punishment that caused the statute of limitations to start running anew." 253 F.3d at 318 (citations omitted). Mock complains here that, for as long as his requests for proper treatment of his fractured finger were ignored, he suffered from increased pain in his hand and arm. This is the same kind of situation that presented a continuing violation in *Heard*.

But Mock's complaint does not allege that his pleas for treatment were ignored after July 25, 2012; he says that his requests for medical attention were ignored from June 1 to July 25, 2012. *See* [29] ¶ 24. There is no allegation that defendants were aware of a need for treatment after the latter date. Mock received treatment for his hand on that date (the x-rays and bandage changes he had sought before), *see id.* ¶ 25, and it is unclear what more he thinks the defendants could have done to treat his broken bone—especially since, by that time, his finger had already healed improperly. *See id.* ¶¶ 6, 25. Thus, even if a continuing violation occurred, that violation continued only until July 25, 2012. There are allegations that Mock suffered additional neck and shoulder pain beginning in September 2012, and that he learned this pain was tied to his broken finger in November 2012. *See id.* ¶¶ 26–27. These allegations are not sufficient to suggest a continuing violation beyond July 25, 2012, because they do not allege a continued refusal to treat Mock's injury.

To the extent Mock seeks relief for the increased pain resulting from the defendants' alleged indifference to his preexisting injury, that claim accrued (under *Heard*) no later than July 25, 2012. Absent any tolling, the limitations period for such a claim expired on July 25, 2014—still more than five months before Mock filed the current complaint.[3]

Mock argues that his claims are still timely because they relate back to the date of his original filing (May 1, 2014). *See* Fed. R. Civ. P. 15(c); [45] at 4–7; [51] a 4–7. Neither Sheriff Dart nor the director of Cermak was named as a defendant in Mock's original complaint. Newly-added claims against new defendants relate back to the date of the original pleading where (1) the claim arises from the "conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading," and (2) the party against whom the claim is asserted, within the period described in Rule 4(m):

> (i) received such notice of the action that [the party] will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C). Rule 4(m) presumptively requires that defendants to a complaint be served within 120 days of the complaint's filing, but the service period may be extended for good cause. Fed. R. Civ. P. 4(m).

---

[3] There is some doubt whether the reasoning in *Heard* is still viable. *See, e.g.*, *Devbrow*, 705 F.3d at 770 n. 3 (noting that the continuing-violation doctrine as applied in *Heard* may have been affected by the Supreme Court's decisions in *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007) and *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)); *Heard v. Elyea*, 525 F. App'x 510, 511 (7th Cir. 2013) (similar). But *Heard* has not been overruled and remains binding on the district courts.

Mock's claims against the Cermak director relate back to his original complaint. The original complaint described the treatment (or lack of treatment) Mock received for his hand injury once he arrived at Cook County Jail, as well as the pain he began to suffer in his neck and shoulders. These are the same events on which Mock bases his current claims against the director. So the new claims arise from the conduct set out in the initial pleading. The next question, then, is whether Mock made "an identity mistake as to the proper party to be named," and the director, in his official capacity, is chargeable with knowledge of that mistake. *Andomissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 853 (7th Cir. 2008); *King v. One Unknown Fed. Corr. Officer*, 201 F.3d 910, 914 (7th Cir. 2000) (citation omitted). A mistake of identity under Rule 15(c) is a mistake about who is liable for the plaintiff's injury. *See Joseph v. Elan Motorsports Techs. Racing Corp.*, 638 F.3d 555, 558 (7th Cir. 2011). A newly-added defendant is chargeable with the knowledge of such an error if the defendant knew or should have known that, "had it not been for [that] mistake, [the plaintiff] would have sued him instead [of] or in addition to suing the named defendant." *Id.* at 560. Both requirements are satisfied with respect to the director.

In Mock's initial complaint, he named as defendants unknown medical staff at Cermak (among others), and described what those staff members did, on an individual basis, when treating Mock's hand injury. *See* [1] at 4–8. This suggests that Mock intended to bring at least an individual-capacity claim for damages against the nurses and doctors who saw him at the jail (*i.e.*, the "unknown" doctors

and staff). *See id.* at 9 (asking to be compensated for the doctors' conduct); *Hill v. Shelander*, 924 F.2d 1370, 1374 (7th Cir. 1991) ("[I]n a suit where the complaint alleges the tortious conduct of an individual acting under color of state law, an individual capacity suit plainly lies . . . ."). But Mock also named "Cermak" as a defendant (more on this below), and asked for injunctive relief. *See* [1] at 9 (stating that he "would like to have [his] fourth metacarpal properly aligned"). That he sought an injunction suggests that Mock was attempting to bring an official-capacity claim, too. *See Greenawalt v. Indiana Dept. of Corrections*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity." (citing *Luder v. Endicott*, 253 F.3d 1020, 1024–25 (7th Cir. 2001))).

Mock did not include in his first complaint any mention of a municipal custom or policy that led to his constitutional injuries—the hallmark of an official-capacity claim. *See Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000) ("Where the plaintiff seeks injunctive relief from official policies or customs, the defendant has been sued in [their] official capacity . . . ." (discussing *Hill*, 924 F.2d at 1373–74)). When this deficiency was pointed out to him, however, *see* June 13, 2014 Order dismissing Mock's original complaint, [5] at 2, Mock submitted an amended complaint that included new allegations referencing "Cermak . . . rules and policies," [8] at 9, 16–17. He also renewed his request for injunctive relief, *see id.* at 27, and changed "Cermak"—which he had been told in the court's June 13 order was not a suable entity—to the "head of Cermak," as a named defendant, *see id.* at

1, 3. Mock's *pro se* filings reasonably indicate that he mistakenly thought he could pursue an official-capacity claim against Cermak officials by suing Cermak Hospital itself. On reviewing these filings, the director of Cermak would have known that, but for this mistake, he would have been named as a defendant from the start.

The director argues that there was in fact no mistake of identity—and thus he could not have known of any such error—because Mock stated in his first amended complaint: (1) that he was not trying to accuse of wrongdoing anyone other than the individuals who failed to properly treat his broken finger; and (2) he named the head of Cermak as a defendant in order to identify the missing (John Doe) parties. *See* [53] at 6 (quoting [8] at 10, 26). But the director takes too narrow a view of Mock's filings. While it's true that Mock was focused on satisfying the requirements to bring individual-capacity claims against John Does, he also consistently sought injunctive relief. Construed liberally, the amended pleading as a whole (in which Mock also referenced a variety of policies and procedures, indicating that he was trying to cure the deficiencies of an official-capacity claim from his original complaint) suggests that Mock included the head of Cermak as a defendant not just as a means to identifying unknown medical staff, but also to obtain the kind of injunctive relief that could only be paired with an official-capacity claim. (Whether Mock has stated a proper official-capacity claim against the Cermak director is a separate question addressed below.) The director is therefore chargeable with the knowledge of Mock's identity mistake.

The director also received notice about the mistaken identity within the requisite period of time. The director argues that the notice requirement has not been satisfied here, because there is no indication that anyone at Cermak was even aware of Mock's suit until 2015 (since it was not until then that summons were issued). *See* [53] at 4–5. But the Rule 4(m) period did not expire while forces beyond Mock's control were directing service of process. *See Stewart v. Special Adm'r of Estate of Mesrobian*, 559 F. App'x 543, 547 (7th Cir. 2014) (explaining that the 120 days do not start to run until an inmate's application to proceed *in forma pauperis* has been granted, and that any delay attributable to screening the prisoner's complaint is "outside of [his] control and constitute[s] good cause to extend the time for notice" under Rule 15(c) (citing, *inter alia*, *Graham v. Satkoski*, 51 F.3d 710, 712–13 (7th Cir. 1995); *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990); *Paulk v. Dep't of the Air Force*, 830 F.2d 79, 83 (7th Cir. 1987))); *see also Keller v. United States*, 444 F. App'x 909, 911 (7th Cir. 2011) ("Rule 15(c) incorporates not only Rule 4(m)'s standard allowance of 120 days for service of process, but also any extension of time for good cause." (citing Fed. R. Civ. P. 15(c) Advisory Comm. Notes (1991 Amendment)). Notice of Mock's claims against Cermak officials was out of his control until service to the director was accomplished by the U.S. Marshal in March 2015. The notice requirement of Rule 15(c) has been met, and Mock's claims against the director of Cermak relate back to his original filing.

But there is no possibility that the claims against the Sheriff will relate back to Mock's May 2014 complaint. Mock named as one of the defendants to that

complaint the Cook County Department of Corrections. He later recognized, in his first amended complaint, that the jail was not itself a suable entity, *see* [8] at 26. But he also acknowledged in the amended complaint that the Sheriff *could* be named as a defendant—even if just to help identify John Doe parties. *See id.* Mock did not include the Sheriff as a defendant in his amended complaint, and all of the John Doe defendants that were included were clearly Cermak nurses and doctors, not jail personnel under the Sheriff's charge. *See id.* at 10, 12–13 (identifying "Jane Doe," "John Doe," and John Does "I" through "V" as a nurse, intake physician, and other doctors, respectively). If it was Mock's original intent to sue the Sheriff (or any other non-medical jail official in their official capacity), the first amended pleading makes clear that Mock chose not to pursue such a claim. Thus, Mock's current claims against Sheriff Dart cannot relate back to his initial filing.

Yet the claims against the Sheriff are not necessarily untimely. The statute of limitations for Section 1983 claims is tolled while a prisoner exhausts the administrative grievance process. *See, e.g.*, *Turley*, 729 F.3d at 651. Mock's second amended complaint alleges that he filed at least one grievance at the jail about inadequate medical are, but we do not yet know the details of that process or if and when he completed it. Plaintiffs "need not anticipate and overcome affirmative defenses, such as the statute of limitations," so Mock's claims against the Sheriff may proceed for now. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (explaining that a complaint may be dismissed based on an affirmative defense "only where the allegations of the

complaint itself set forth everything necessary to satisfy the . . . defense") (citations omitted).

### 2. *The Adequacy of the Allegations on the Merits*

Both defendants argue that, statute of limitations aside, Mock's deliberate-indifference claims must be dismissed because: (1) Mock fails to state a proper claim for deliberate indifference; and (2) even if Mock has stated a claim for deliberate indifference, he has not adequately alleged that the indifference stems from a policy, practice or custom for which the defendants may be held liable in their official capacities. *See* [38] at 7–11; [47] at 8–13. To state a proper claim for an unconstitutional denial of medical care, a prisoner must allege that he suffered from an objectively serious medical condition, and that an official was deliberately indifferent to that condition. *See Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015) (citing *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011)). Deliberate indifference exists where a prison official realizes that there exists a substantial risk of serious harm to the inmate, but recklessly disregards that risk. *See id.* at 776–77 (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)). Where, as here, the prisoner is a pre-trail detainee, his deliberate-indifference claim is governed not by the Eighth Amendment but by the Fourteenth. *See Pittman ex rel. Hamilton v. Cnty. of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014) (citation omitted); *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013) (citations omitted). But the same analysis applies to both types of claims. *See id.*[4]

---

[4] Mock brings deliberate-indifference claims under both the Eighth Amendment (Counts V and VI) and Fourteenth Amendment (Counts I and II). The former are unnecessary, but

Defendants do not dispute that Mock's broken finger was a serious medical condition. They instead argue that he has not alleged deliberate indifference to that condition, emphasizing: (1) that Mock did receive some treatment for his condition; and (2) that his disagreement with the *form* of treatment he received does not support a claim for relief. *See* [38] at 9–11; [47] at 10–12. That Mock at least received some treatment for his hand injury (he allegedly saw a nurse three times after his meeting with the intake physician, and was taken to have x-rays performed and his temporary bandages replaced on July 25, 2012, *see* [29] ¶¶ 23, 25) does not foreclose his deliberate-indifference claims. *See Perez*, 792 F.3d at 777; *Conley v. Birch*, 796 F.3d 742, 748 (7th Cir. 2015). Mock may still state a claim for deliberate indifference if he alleges facts from which it may be inferred that the treatment he did receive was so inappropriate as to evidence intentional mistreatment—that is, that the treatment decisions at issue were so far afield of the norm that no minimally competent professional would have made them. *See Petties v. Carter*, 795 F.3d 688, 692 (7th Cir. 2015) (citations omitted); *Arnett*, 658 F.3d at 751 (citation omitted).

Whether a minimally competent medical professional would have chosen not to replace Mock's temporary arm bandage is a question of fact that cannot be resolved at this stage of the litigation. Defendants argue that Mock's professed desire for a bandage replacement suggests at most that he had a personal preference for a different course of treatment than the one he received. *See* [38] at

defendants do not seek to dismiss the counts on that ground, so I address all of the deliberate-indifference claims collectively.

9–10; [47] at 10–11. While defendants are correct that a prisoner's "disagreement with a doctor's medical judgment is not enough to prove deliberate indifference," *Petties*, 795 F.3d at 691 (citations omitted); *see also Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007) (discussing *Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)), Mock alleges more than that here. He claims that the treatment offered by Cermak personnel—*i.e.*, the continued use of a temporary bandage to treat his fractured finger—strayed from the form of treatment recommended by the emergency physician at South Shore Hospital.

Of course, "[m]ere differences of opinion among medical personnel . . . do not give rise to deliberate indifference." *Burton v. Downey*, — F.3d —, No. 14-3591, 2015 WL 5894126, at *7 (7th Cir. Oct. 8, 2015) (quoting *Estate of Cole v. Fromm*, 94 F.3d 254, 261 (7th Cir. 1996)). And it may be that, in deviating from the instructions from the South Shore physician, the staff at Cermak made medically reasonable decisions—or, if unreasonable, only negligent or grossly negligent ones at most. If that is the case, then Mock cannot show deliberate indifference. *See, e.g.*, *Conley*, 796 F.3d at 746; *Arnett*, 658 F.3d at 751. But it may also be the case that the refusal to substitute Mock's temporary bandage with a more permanent one reflects a substantial departure from accepted medical norms. It is common knowledge that a broken bone may need to be reset and immobilized in order to heal properly. Mock's claim of deliberate indifference by Cermak staff is at least a plausible one.

The same cannot be said of Mock's claims against non-medical personnel. In general, non-medical defendants are entitled to rely on the expertise of medical

professionals. *Arnett*, 658 F.3d at 755; *see also id.* at 756 ("A layperson's failure to tell the medical staff how to do its job cannot be called deliberate indifference . . . ." (quoting *Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009))). If, however, non-medical staff are put on notice of an excessive risk to a prisoner's health or safety—including where a risk persists in spite of medical care already received—they may not turn a blind eye or deaf ear to that risk. *See Perez*, 792 F.3d at 781–82. But Mock has not alleged that the non-medical staff here received the requisite kind of notice.

In his current complaint, Mock states that no officer "charged with [his] custody . . . responded to his verbal and written requests for immediate medical attention" from June 1 to July 25, 2012. [29] ¶ 24. But he also alleges that he did not begin submitting medical requests until June 5 (*i.e.*, five days after he arrived at the jail on May 31, 2012) *See id.* ¶ 22. He does not explain the discrepancy. Nor does Mock explain how it is that he supposedly received *no* responses to his medical requests until July 25 when, elsewhere in the complaint, he alleges that he saw a nurse on three separate occasions between his intake exam (on May 31) and his doctor's appointment on July 25. *See id.* ¶¶ 22–23. Moreover, the complaint offers no suggestion of how the requests Mock did submit—including, for example, any grievances he filed (the first of which he says he filed on June 19, 2012, *see id.* ¶ 22)—supposedly alerted non-medical jail officials to an excessive risk to Mock's health. There are no allegations concerning what details, if any, he included in the requests about his medical condition or the medical care he did receive. Nor do we

know from the complaint how many requests or grievances he filed, or to whom at the jail he submitted them.

A delay in addressing a severely painful but readily treatable condition may form the basis of a deliberate-indifference claim, *Smith v. Knox County Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012), but only if the delay was intentional, *see Burton*, 2015 WL 5894126, at *7. That Mock submitted an unknown number of medical requests to some non-medical personnel is not enough to reasonably suggest that the latter deliberately delayed proper treatment of his objectively serious injuries. Accordingly, Mock's deliberate-indifference claims against Sheriff Dart are dismissed because there was no underlying constitutional violation by a Sheriff's Department employee. *See D.S. v. East Porter Cnty. Sch. Corp.*, 799 F.3d 793, 800 (7th Cir. 2015) (citing *Sallenger v. City of Springfield, Ill.*, 630 F.3d 499, 504 (7th Cir. 2010)); *see also Petty v. City of Chicago*, 754 F.3d 416, 424 (7th Cir. 2014) (citation omitted).

Remaining are Mock's deliberate-indifference claims against the director of Cermak, who is also sued in his official capacity. An official-capacity claim against the director is really a claim against Cook County. *See Holmes v. Sheahan*, 930 F.2d 1196, 1198–99 (7th Cir. 1991). So, to move forward with such a claim, Mock must allege that the County has caused the violation of his constitutional rights through an express government policy, a widespread practice that has the force of law, or a person with final policymaking authority. *See Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (quoting *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir.

1995)); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) ("*Respondeat superior* or vicarious liability will not attach under § 1983." (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978))).

Mock refers in his complaint to only one express policy, the "Inmate Information Handbook," which allegedly explains to inmates their rights to medical treatment while detained at the Cook County Jail. *See* [29] ¶ 21. But there are no allegations connecting the use of the handbook by county employees to Mock's purported injuries, so his claim against the County/Cermak director cannot rest on this policy. *See Wilson v. Cook County*, 742 F.3d 775, 779 (7th Cir. 2014) (explaining that the official policy or custom must be "the moving force behind the deprivation of constitutional rights" (quoting *Teesdale v. City of Chicago*, 690 F.3d 829, 833 (7th Cir. 2012))); *see also Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (requiring a "direct causal link" between the municipal action and constitutional violation). Mock instead appears to proceed under the second option above—a widespread custom or practice.

There are no bright-line rules defining a widespread custom or practice. *Thomas v. Cook Cnty. Sheriff's Dep't*, 604 F.3d 293, 303 (7th Cir. 2009). Generally, however, a plaintiff may establish a municipal custom or practice by showing a series or pattern of bad acts from which it may be inferred that government policymakers were on notice of their subordinate officers' wrongdoing but, by failing to do anything in response, either encouraged or condoned those violations. *See Hahn v. Walsh*, 762 F.3d 617, 636–37 (7th Cir. 2014) (citations omitted).

Mock bases his claim against the director on his personal experiences of allegedly inadequate medical treatment at the jail. *See* [29] ¶¶ 19–20, 23 (stating that, from his intake on May 31 until July 25, 2012, Mock saw a nurse on three occasions); *id.* ¶ 24 (alleging that, from June 1 to July 25, 2012, Mock's injuries were not treated properly).[5] It is not impossible for a plaintiff to demonstrate an official policy or custom merely from his own experiences, but it is more difficult to do it this way, because "what is needed [to prevail on an official-capacity claim] is evidence that there is a true municipal *policy* at issue, not a random event." *Grieveson v. Anderson*, 538 F.3d 763, 774 (7th Cir. 2008) (quoting *Phelan v. Cook County*, 463 F.3d 773, 789–90 (7th Cir. 2006)) (emphasis added). In *Grieveson*, the Seventh Circuit concluded that four incidents of (alleged) indifference by jail staff, experienced only by the plaintiff himself, were not enough to suggest a widespread unconstitutional practice. *See id.* at 775 (observing that such evidence does not give rise to the inference that "the *county itself* approved, acquiesced, or encouraged" the constitutional violation). Mock alleges no more than what the court of appeals found insufficient in *Grieveson*: a handful of possible violations, experienced by the plaintiff alone. This is not enough to plausibly suggest the existence of a well-settled custom of indifference by county employees to prisoners' serious medical needs.

Mock also alleges that he submitted medical requests to Cermak staff (asking to see a doctor), to which he never received a response. [29] ¶¶ 6, 24. But one cannot infer that this failure to respond was the product of a widespread county practice or

---

[5] Mock does not complain of the treatment he received from the Cermak doctor on July 25.

custom. *Cf. Holmes*, 930 F.2d at 1201 ("That [the plaintiff, a pre-trial detainee at Cook County Jail] was denied access to a physician and to medication, though egregious and unfortunate, does not . . . give rise to the inference that the County maintained inadequate procedures which were the proximate cause of his injury."). As currently pleaded, Mock's complaint suggests only isolated incidents of inadequate medical care. He has not alleged a pattern of constitutional violations indicative of a well-settled policy for which the County may be held liable under Section 1983. Mock's deliberate-indifference claims against the director of Cermak are therefore dismissed.

Mock argues that he should be permitted to move forward with his claims against the government entities in the hope that discovery will uncover facts enough to hold those defendants liable. *See* [45] at 9; [51] at 9. He stresses that it is at least possible that the defendants here maintained customs or policies that were responsible for his injuries. *See* [45] at 11, 14. But the mere possibility of unconstitutional conduct does not suffice to avoid dismissal of one's claim. A complaint may move past the pleading stage only if it states a plausible claim to relief. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (quoting *Twombly*, 550 U.S. at 557)) (internal quotation marks omitted). Mock has not alleged plausible claims of deliberate indifference against either the Sheriff or the director of Cermak, so these claims do not pass muster under Rule 8.

### B. The Equal Protection Claims (Counts III and IV)

Mock also brings an equal-protection claim against the Sheriff (Count III) and the director of Cermak (Count IV), each of whom is again sued in his official capacity. The Equal Protection Clause of the Fourteenth Amendment requires that persons similarly situated be treated alike. *Council 31 of the Am. Fed'n of State, Cnty. and Mun. Employees v. Quinn*, 680 F.3d 875, 886 (7th Cir. 2012) (quoting *United States v. Bruckner*, 646 F.3d 1012, 1017 (7th Cir. 2011)). To show that a defendant has violated a plaintiff's right to equal protection, the plaintiff typically must show that the defendant acted with a discriminatory purpose and discriminated against the plaintiff "based on [his] membership in a definable class." *D.S.*, 799 F.3d at 799 (citing *Nabozny v. Podlesny*, 92 F.3d 446, 453 (7th Cir. 1996)); *see also Dunnet Bay Contsr. Co. v. Borggren*, 799 F.3d 676, 697 (7th Cir. 2015) (citation omitted). Where the plaintiff does not allege membership in an identifiable group, he may proceed under the "class-of-one" theory of equal protection. *D.S.*, 799 F.3d at 799. To prevail on a class-of-one claim, the plaintiff must show: (1) that he was "intentionally treated differently from others similarly situated"; and (2) that there was no rational basis for the difference in treatment. *Id.* (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

It unclear which theory of equal protection Mock is seeking to assert in this case. On the one hand, the complaint speaks of a failure to provide Mock, individually, with the medical care to which he claims he was entitled under Illinois law. *See* [29] ¶ 48 (alleging that Sheriff Dart had "no basis on which to have denied .

. . *Plaintiff* . . . his statutorily provided right to required medical care") (emphasis added); *id.* ¶ 56 (alleging the same against the director of Cermak). These allegations suggest that Mock is attempting to bring a class-of-one claim—*i.e.*, a claim that he was treated differently from other inmates at the jail (who, one might assume, did receive proper medical treatment for their own injuries). But in his briefs opposing defendants' motions to dismiss, Mock argues that defendants maintained policies or customs that violated *all* prisoners' rights, *see* [45] at 10 ("[T]he CCDOC grievance process is an official policy or custom that promotes the ignoring of *prisoners'* genuine requests for emergent medical treatment.") (emphasis added); *id.* at 11 ("[T]here may exist a custom or practice at Cermax [*sic*] of administering the slightest amount of medical care to *prisoners and detainees* . . . .") (emphasis added); [51] at 10–11 (similar). These statements suggests that Mock bases his equal-protection claims on his classification as a detainee.

In any event, neither type of equal-protection claim is viable based on the allegations of the second amended complaint. Nothing in the complaint suggests that either the medical or non-medical staff at the jail addressed prisoners' healthcare needs differently than they did the needs of other individuals. And inasmuch as Mock claims that jail staff discriminated against him personally, there are no allegations from which to infer that the discrimination arose from a *policy* of singling Mock out for differential treatment. Even if true that Mock suffered purposeful, unequal treatment at the hands of jail officials, that is not enough to state a proper claim to relief against those officials' employers. *See McCauley v. City*

*of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (requiring enough factual content to permit the inference of a policy, custom, or practice of intentional discrimination). The equal-protection claims are dismissed.

### C.     The State-Law Claims (Counts VII–IX)

In addition to his Section 1983 claims, Mock brings several claims under Illinois law. These include: (1) claims for violation of Section 5/103-2 of the Illinois Code of Criminal Procedure (725 ILCS 5/103-2), *see* [29] ¶¶ 67–71 (Count VII, against Sheriff Dart); *id.* ¶¶ 72–76 (Count VIII, against the Cermak director); and (2) an indemnification claim against the County, *see id.* ¶¶ 77–80 (Count IX). Because the federal claims are dismissed, I decline to exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3). Counts VII through IX of the second amended complaint are also dismissed.

### IV.     Conclusion

For the reasons discussed above, defendants' motions to dismiss, [38] and [47], are granted. Mock's seconded amended complaint, [29], is dismissed in its entirety. Because Mock may be able to cure some of the deficiencies discussed above through re-pleading, the dismissal is without prejudice.

ENTER:

Manish S. Shah
United States District Judge

Date: 10/19/15