UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOUGLAS MOCK,

    Plaintiff,

v.

THOMAS DART, Cook County Sheriff;
JOHN RABA, Director of Cermak Health
and Hospital Services; and COUNTY OF
COOK,

    Defendants.

No. 14 CV 3273

Judge Manish S. Shah

## ORDER

Defendants' motion to dismiss plaintiff's third amended complaint, [65], is granted. The federal-law claims are dismissed with prejudice, and the state-law claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3). Enter judgment and terminate civil case.

## STATEMENT

Douglas Mock broke his hand during a fight on May 28, 2012; Mock was arrested later that day. *See* [59] ¶¶ 17–18.[1] Before taking Mock to the Cook County Department of Corrections, Chicago police officers brought Mock to South Shore Hospital for treatment on May 31. *See id.* ¶ 19. Physicians at South Shore put a temporary cast or bandage on Mock's arm and told him to follow up with a doctor in two days. *Id.* Mock was then taken to the jail, where he saw two intake physicians from Cermak Health and Hospital Services, a division of Cook County that provides medical services to detainees. *Id.* ¶¶ 15, 20. Mock gave the intake physicians his paperwork from South Shore. *Id.* ¶ 20. One of the physicians told Mock that he would see a doctor again in few days, and gave him a referral to an "ortho" for urgent surgery. *Id.*

---

[1] Bracketed numbers refer to entries on the district court's docket; referenced page numbers are from the CM/ECF header placed at the top of filings.

By June 5, however, Mock had not seen another doctor, and he began to submit medical requests for a doctor's visit. *See id.* ¶ 23. On June 12, 2012, Mock saw a nurse, who gave him ibuprofen but did not change his bandages or schedule him an appointment with a physician. *Id.* ¶¶ 23–24. He saw a nurse again two more times in the next month; each gave him ibuprofen but would not change his bandages. *See id.* By July 12, the date of his third nurse's visit, Mock's bandages had begun to emit a noxious odor. *Id.* ¶ 24. The nurse whom he saw on that day scheduled Mock for a doctor's appointment two weeks later. *Id.* On July 25, 2012, Mock was taken for x-rays and to have his bandages replaced. *See id.* ¶ 26. His hand and fingers were still swollen, but the doctor told Mock that the natural healing process had already begun. *See id.* (Mock claims that his hand healed improperly. *See id.* ¶ 6.) Mock saw the same doctor again on August 6, by which time, according to the doctor's notes, Mock was no longer complaining of pain (though Mock says he was still in pain—pain that later spread to his shoulder, neck, and head.) *See id.* ¶¶ 26–27. After most of his visits with Cermak staff, the staff member instructed Mock to follow up with his primary care physician. *See id.* ¶ 52.

In November 2012, Mock began to see a physical therapist, who measured Mock's mobility and determined that Mock had "locked" shoulders as a result of the injuries he suffered on May 28. *See id.* ¶ 28. The locking, according to the therapist, was causing Mock's shoulder pain, and could be corrected only through a surgical procedure to reset Mock's muscles and ligaments. *See id.* Mock says that he submitted medical requests concerning his shoulder through at least May 13, 2015, but has never received the corrective surgery. *See id.* ¶ 29. Mock also claims that through the same date he continued to submit medical requests about his hand injury, asking in particular to see an orthopedic specialist. *See id.*

At least some of Mock's medical requests were reviewed by a social worker at the jail. *See id.* ¶ 30. The social worker denied Mock's requests—as she did the requests of some of the other inmates in Mock's cell block. *See id.* In 2013, those inmates, including Mock, filed grievances about the denials, which were in turn denied. *See id.* The complaining inmates were then separated and transferred to different cell blocks. *See id.* Mock was transferred again in 2014 after he filed a grievance about jail staff cutting short his library access. *See id.* ¶ 31.

Mock sued in their official capacities Thomas Dart (as Sheriff of Cook County) and Dr. John Raba (director of Cermak) under 42 U.S.C. § 1983, for deliberate indifference to Mock's medical needs and violation of his right to equal protection. Mock also brought claims against the same defendants under Section 5/103-2 of the Illinois Code of Criminal Procedure (725 ILCS 5/103-2), and an indemnification claim against the County under the Illinois Local Governmental and Governmental Employees Tort Immunity Act (745 ILCS 10/9-102). The deliberate-indifference

claims were dismissed—as to Sheriff Dart because Mock did not adequately plead a constitutional violation by non-medical staff at the jail, and as to Dr. Raba because Mock did not allege enough to plausibly suggest a well-settled custom of indifference by Cermak staff to inmates' serious medical needs. *See* [56]. Mock's equal-protection claims were likewise dismissed for failure to allege a policy of discrimination. *See id.* As no federal claims remained in the case, the state-law claims were dismissed under 28 U.S.C. § 1367(c)(3). The dismissals were without prejudice, and Mock has since amended his pleading. [59] The defendants again move to dismiss the claims against them. [65].

In reviewing a motion to dismiss under Rule 12(b)(6), a district court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in the plaintiff's favor. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 946 (7th Cir. 2013) (quoting *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010)). For the plaintiff to move forward, his complaint must contain a short and plain statement showing that he is entitled to relief. Fed. R. Civ. P. 8(a)(2). The pleading must present enough factual matter, accepted as true, that the claim to relief "is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

*The Federal Claim Against Sheriff Dart (Count I)*

Mock claims that non-medical staff at the jail, in the Sheriff's employ, were deliberately indifferent to Mock's serious medical needs and thus violated his due-process rights under the Fourteenth Amendment to the United States Constitution. (Because Mock was a pre-trial detainee and not a convicted prisoner, his deliberate-indifference claims are governed by the Fourteenth Amendment rather than the Eighth—though the standards are the same. *See, e.g.*, *Smith v. Sangamon Cnty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013) (citations omitted).) A prison official is deliberately indifferent to an inmate's needs when the official realizes that there is a substantial risk of serious harm to the inmate but recklessly disregards that risk. *See Perez v. Fenoglio*, 792 F.3d 768, 776–77 (7th Cir. 2015) (citing *Farmer v. Brennan*, 511 U.S. 825, 836–37 (1994)). There is no dispute that Mock's hand injury was a serious one. Defendants argue instead that Mock has not pleaded any facts suggesting that prison officials recklessly ignored this injury or, if they did, that they did so in accordance with a widespread custom or policy.

Mock says he submitted medical requests about his hand from approximately June 5, 2012, to May 13, 2015—requests that, until August 6, 2012, included complaints of severe pain but went unanswered until July 25, 2012. *See* [59] ¶¶ 23, 25–26, 29.[2] (After July 2012, the requests were apparently answered but denied. *See*

---

[2] In paragraph 29 of his third amended complaint, Mock states that he began to submit

*id.* ¶ 30.) But Mock saw healthcare professionals about his broken hand on four separate occasions between June 12 and July 25, 2012. Even assuming that the treatment these individuals provided was constitutionally inadequate, *non-*medical jail officials are not liable under Section 1983 unless they obtained from Mock's correspondence sufficient knowledge of that deprivation. *See Perez*, 792 F.3d at 781–82. Mock's previous complaint did not plausibly allege such knowledge, and his current pleading fares no better. It includes no allegations suggesting that Mock provided through his requests or grievances details enough to put jail staff on notice of the inadequacy of medical care Mock was receiving.

Mock also alleges that, at some point (it's unclear when), he started submitting medical requests about his shoulder condition. But these allegations suffer from the same problem. Mock didn't begin to feel pain in his shoulder until September 2012, and by November 2012, he was seeing a physical therapist. Mock claims that the therapy didn't fix his shoulder issue and that he never received the corrective surgery the therapist said he needed. *See* [59] ¶¶ 29–30. But Mock does not allege that the jail officials knew of this. Mock states in his complaint that he submitted requests and grievances about his shoulder, but it cannot be inferred from these spartan allegations that Mock also included in the requests or grievances details sufficient to alert prison officials to an excessive risk to Mock's health. *See Perez*, 792 F.3d at 782. Unless a prison official knows or has reason to believe that prison doctors or their assistants are mistreating (or not treating) an inmate, the official is "justified in believing that the [inmate] is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (citing *Hayes v. Snyder*, 546 F.3d 516, 525 (7th Cir. 2008); *Greeno v. Daley*, 414 F.3d 645, 656 (7th Cir. 2005)). If the prison officials in this case had reason to believe that Mock *wasn't* in capable hands, it is not evident from the complaint.

Even if Mock had adequately alleged deliberate indifference by non-medical staff, still his claim against the Sheriff would fail because Mock has not pleaded enough to suggest that the indifference stemmed from a widespread custom or policy. Mock has sued the Sheriff in his official capacity, so the claim is really against the Sheriff's Department. *See Sow v. Fortville Police Dep't*, 636 F.3d 293, 300 (7th Cir. 2011) ("[A]n official capacity suit is another way of pleading an action against an entity of which the officer is an agent.") (citation omitted); *Askew v. Sheriff of Cook Cnty., Ill.*, 568 F.3d 632, 636 ("[T]he Sheriff [of Cook County] is an independently elected county officer and is not an employee of the county in which [he] serves.") (citations and internal quotation marks omitted); *Franklin v. Zaruba*, 150 F.3d 682,

---

medical requests for his hand as early as June 15, 2012. *See* [59] ¶ 29. Elsewhere in the pleading, however, Mock suggests that he began to submit such requests on June 5, 2012. *See id.* ¶¶ 19–20, 23 (alleging that he began to submit requests five days after he saw an intake physician on May 31, 2012). I assume, in Mock's favor, that the earlier (June 5) date is the correct one.

686 (7th Cir. 1998). As there is no *respondeat superior* under Section 1983, the Sheriff's Department cannot be liable for its employees' unconstitutional conduct unless the moving force behind the violation was a department policy or custom—*i.e.*, an express policy that caused a constitutional deprivation when enforced, or a widespread custom or practice so well-settled that it had the force of law. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385, 389 (1989); *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005) (citation omitted).

Mock claims that the moving force behind his injuries here was an unwritten practice of disregarding an express policy: the Inmate Information Handbook. The handbook, which Mock received when he arrived at the jail, allegedly explained the inmates' rights to medical treatment, as well as the process for filing a grievance. *See* [59] ¶ 22. According to the handbook, the recipient of a grievance has 15 days in which to respond, and retaliation against inmates who file grievances is not permitted. *See id.* These policies were in this case contravened, says Mock, because jail officials in one instance took two months to answer Mock's grievance, on multiple occasions transferred Mock to different cell blocks, and at some point cut his library access short, *see id.* ¶¶ 23, 25, 30–31—in retaliation, he contends, for filing the grievances in the first place, *see* [67] at 7. The failure to follow certain jail policies in response to Mock's requests does not suggest a well-settled custom that in turn caused the indifference to Mock's medical needs. Mock highlights that some other inmates' medical requests and grievances were denied, as well, and that these inmates, too, were transferred to other cell blocks. *See* [59] ¶ 30. Without more, however, this allegation similarly fails to indicate a widespread practice of deliberate indifference by non-medical jail staff, as nothing in the complaint suggests that those particular requests ought to have been granted or that reclassifying inmates in a cell block was connected to any denial of medical treatment. Mock's claim against the Sheriff is dismissed.

*The Federal Claims Against Dr. Raba (Counts II and III)*

Mock also brings official-capacity claims against Dr. Raba for deliberate indifference (Count II) and equal protection (Count III).[3] These are claims against Cook County. *See Holmes v. Sheahan*, 930 F.2d 1196, 1198–99 (7th Cir. 1991).

In his second amended complaint, Mock had plausibly alleged deliberate indifference to his serious medical needs by Cermak staff. *See* [56] at 16–17. This has not changed. The question here is whether Mock has included in his current pleading facts sufficient to reasonably suggest that this indifference stemmed from a county custom or policy. Mock described in his prior pleading only a handful of incidents

---

[3] The equal-protection claim against the Sheriff was dropped.

where he received inadequate medical care—facts from which a well-settled practice could not be inferred. *See id.* at 21–22; *Grieveson v. Anderson*, 538 F.3d 763, 774–75 (7th Cir. 2008). To his third amended complaint Mock adds: that after most of his visits with Cermak staff, the staff members told him to follow up with his primary care physician; and that Cermak staff treated Mock, a pre-trial detainee, differently than they did prisoners at the jail, *see* [59] ¶¶ 52–53—the implication being that Cermak personnel instructed detainees, but not convicted prisoners, to visit their private physicians, as only detainees might soon be released from jail.

These new allegations do not suggest that the policy of different treatment caused the failure to provide Mock with needed medical care; and here is where Mock's current complaint, like his previous pleading, falls short. There are no non-conclusory allegations reasonably suggesting a widespread policy leading to neglect of detainees' serious medical needs—and thus no allegations plausibly tying Mock's injuries to a county custom or practice. Accordingly, neither Mock's deliberate-indifference claim nor his equal-protection claim may proceed against the County.

*The State-Law Claims (Counts IV through VI)*

As the federal claims are dismissed, I decline to exercise supplemental jurisdiction over the state-law claims. *See* 28 U.S.C. § 1367(c)(3).

ENTER:

Date: 5/9/16

Manish S. Shah
U.S. District Judge